UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                    CASE NO: 2:16-cr-79-FtM-29MRM

KEYONDRE DIANO KENDRICK

_____

### OPINION AND ORDER

This matter comes before the Court on Defendant's Motion to Dismiss the Indictment . . . Based on Violation of Defendant's Sixth Amendment Speedy Trial Rights (Doc. #40) filed on October 10, 2018.  The United States' Response (Doc. #47) was filed on October 24, 2018.  The Court held an evidentiary hearing on October 31, 2018.  For the reasons set forth below, the motion is denied.

**I.**

The testimony at the evidentiary hearing, and the record in the court file, reflect the following factual chronology:

On or before **March 17, 2015,** the Federal Bureau of Investigation (FBI) received information from the Seminole Tribe Police Department concerning fraudulent activity by a number of persons at a casino in February, 2015.  The FBI opened an investigative case file(s) on Keyondre Diano Kendrick (defendant or Kendrick) and four others in connection with the fraudulent use of access devices.  The investigation was conducted jointly with the Seminole Police Department.

On **April 13, 2016,** a Florida state court issued a writ of bodily attachment against defendant for failing to pay child support. (Government Exhibit 6, p. 2.) Defendant testified at the evidentiary hearing that he did not know the writ had been issued, but in any event was unemployed at the time and could not have paid child support.

On **July 6, 2016,** a sealed Indictment (Doc. #3) was filed in the Fort Myers Division of the Middle District of Florida charging defendant with a single count of Access Device Fraud in violation of 18 U.S.C. § 1029(a)(2). An Arrest Warrant (Docs. ##4, 10) for defendant was issued the same day.

Also on **July 6, 2016,** the Arrest Warrant was obtained by the FBI case agent, Kevin McCormick. This arrest warrant remained active at all relevant times.

Also on **July 6, 2016,** an Indictment was returned against Ashley Alicia McBride (Case No. 2:16-cr-80), defendant's aunt, for access device fraud; Rony Jirardin (Case No. 2:16-cr-78) for access device fraud; Stephanie Michard Petit Frere (Case No. 2:16-cr-77) for access device fraud; and Shanisha Dekeisha Boyd (Case No. 2:16-cr-76) for access device fraud. Each of these defendants was arrested and plead guilty. The Plea Agreements or factual basis for each guilty plea indicate these cases relate to fraudulent activity in connection with the Seminole Indian casino.

On **July 7, 2016,** Special Agent McCormick entered the Arrest Warrant into the federal National Crime Information Center (NCIC) computer system.  (Government Exhibit 1.)  "The NCIC system allows law enforcement to cross-reference arrest warrants nationwide." United States v. Machado, 886 F.3d 1070, 1079 (11th Cir. 2018).

Also on **July 7, 2016,** Special Agent McCormick accessed the State of Florida's Driving and Vehicle Information Database (DAVID) computer system. (Government Exhibit 2A.)  The FBI determined through the DAVID system that defendant's driver's license had been suspended since November 17, 2011, and an identification card had been issued.  The DAVID system revealed no useful information as to defendant's current whereabouts.  It is undisputed that the address for defendant in this database and on his identification card (20925 NW 38 Ave, Miami Gardens, Fl) was not current.  According to defendant, this address had not been current since early 2015, and he had not updated the address because he never had a chance to do so.

On **November 30, 2016,** the FBI again accessed the DAVID system, but found no new information.  (Government Exhibit 2B.)

Also on **November 30, 2016,** the Tampa FBI office ran a LexisNexis Accurint For Law Enforcement report.  (Government Exhibit 3.)  This report consisted of the collation of data about defendant from a variety of sources.  None of the information

included the address where defendant testified he was living (3590 N.W. 32d Court, Fort Lauderdale, Fl) at all relevant times.

On **December 1, 2016,** FBI Special Agent Christopher Townsend ran a criminal history on defendant. (Government Exhibit 4.) This confirmed that the arrest warrant in this case was active, showed no new arrests for defendant, and continued to show no new information regarding defendant's current location.

Also on **December 1, 2016,** Special Agent Townsend accessed the Comprehensive Case Information System (CCIS) of the Miami-Dade County Clerk's Office. (Government Exhibit 5.) This showed a January 5, 2016 state arrest for misdemeanor possession of cannabis. Agents checked for a pending court date, but found that the charge had been dismissed on March 2, 2016.

On **December 14, 2016,** Special Agent Townsend electronically sent a letter to the Miami FBI office requesting assistance in locating and arresting defendant. (Government Exhibit 6.) The letter contained the known information about defendant to date.

On **January 18, 2017**, Special Agent Alonzo Palomares of the FBI's Miami, Florida office began to do research on the lead request sent by the Fort Myers FBI office. Agent Palomares conducted online research to determine defendant's profile and possible relatives. As a result, he determined there were three possible addresses associated with defendant. As it turned out,

none of these were the address where defendant testified he had been residing.

On **January 27, 2017,** Special Agent Palomares and Special Agent Justin Brandon conducted surveillance on the three locations. It was determined that no one was home at 3025 NW 81st Terrace, Miami, Florida, which Special Agent Palomares believed was the probable address of defendant's grandmother (but was actually the address of defendant's adopted mother); that 2751 SW 116th Ave, #207, Miramar, Florida was possibly not a good address for defendant's mother; and that 1608 NW 16th, Fort Lauderdale, Florida, associated with a girlfriend, was an abandoned property. Agent Palomares conveyed the information to Special Agent Townsend, and took no further investigative steps. At the evidentiary hearing, defendant testified he was not living at any of these locations.

Special Agent Townsend contacted the United States Postal Service to see if defendant was obtaining mail at a current location. On **May 25, 2017,** Special Agent Townsend acknowledged receiving a message from a postal inspector stating there was no forwarding mailing address for defendant. (Government Exhibit 7A.) Special Agent Townsend provided two additional addresses (neither of which is the one at which defendant asserts he was residing), advised that defendant was no longer at either address, and asked if the Postal Service could determine where defendant was receiving his mail. (Government Exhibit 7A.)

On **June 13, 2017,** the Postal Service in the Miami area informed the Postal Inspector that it obtained one address for defendant (2070 NW 28th Terrace, Fort Lauderdale) but that no mail was delivered to that address for over a week. (Government Exhibit 7B.)

On **June 15, 2017,** the Miami office informed the Postal Inspector that the occupant of 3025 NW 81st Terrace, Miami had moved and left no forwarding address. (Government Exhibit 7B.) This was forwarded to Special Agent Townsend. (Government Exhibit 7B.)

On **July 27, 2017,** the Tampa FBI office prepared an Investigative Tactical Report containing a Social Media Analysis. (Government Exhibit 8.) This lengthy report analyzed a large number of social media sources, but was unable to discover the current address for defendant.

On **September 21, 2017,** Special Agent Townsend requested assistance locating defendant from the U.S. Department of Labor Office of Inspector General. (Government Exhibit 9.) Special Agent Townsend inquired whether that agency could do a wage and hour request/database search to see if defendant was actively employed or receiving benefits. On **September 21, 2017,** the Department of Labor responded, (Government Exhibit 9), with some information, including a November, 2016 address in Fort Lauderdale. This address had been previously known to the FBI

(see Government Exhibit 6) and was not the address at which defendant testified he was living. The most recent employment information about defendant was from 2014.

On **November 5, 2017,** the case was re-assigned to Special Agent Morgan Savage upon Special Agent Townsend's transfer to Tennessee.

On **April 5, 2018,** the United States Attorney's Office filed an In Camera Motion to Unseal Indictment. (Doc. #5.) The Motion noted that sealing had been initially requested so as not to hinder or impede arrest efforts were the proceedings to become public, but that the necessity for sealing no longer existed.

On **April 9, 2018** the Indictment was unsealed by order of the Magistrate Judge. (Doc. #6.)

On **May 15, 2018,** defendant was arrested by the Fort Lauderdale Police Department in Fort Lauderdale, Florida on unrelated theft charges. (Government Exhibit 10.) Defendant told the officers he was unemployed, but had a job lined up. The police report identified 20925 NW 38 Ave, Miami Gardens, Florida as the address given by defendant. A criminal history check by the officers discovered the federal arrest warrant, and the officers notified the FBI. This was the first time the FBI knew defendant's whereabouts. May, 2018 was also the first time the FBI was aware that 3590 N.W. 32d Court, Lauderdale Lakes, Florida was defendant's current address.

On **July 12, 2018,** the United States Attorney's Office filed a Petition for Writ of Habeas Corpus Ad Prosequendum. (Doc. #8.) The Petition stated that defendant was confined in the Broward County Jail, Fort Lauderdale, Florida, and he was needed for proceedings in the instant federal case.

On **July 13, 2018,** a Writ of Habeas Corpus Ad Prosquendum (Doc. #9) was filed.

On **July 26, 2018,** defendant was taken into custody on the federal Arrest Warrant in this case (Doc. #10) pursuant to the Writ.

On **August 9, 2018,** defendant had his initial appearance before a magistrate judge in Fort Myers, Florida. (Doc. #14.) The Federal Public Defender's Office was appointed the same day (Doc. #16) and a detention hearing was scheduled. (Doc. #18.)

On **August 14, 2018,** defendant orally moved to continue the detention hearing (Doc. #22), which was granted. (Doc. #23.) Defendant ultimately waived the detention hearing. (Docs. ##26-28.)

At a **September 10, 2018** status conference, defendant through counsel requested a continuance of the trial date, which was granted. (Docs. ##31-33.)

On **September 11, 2018,** the Federal Public Defender's Office moved to withdraw because it had previously represented

defendant's aunt Ashley McBride, who had been indicted on a "strikingly similar" indictment. (Doc. #34.)

On **September 12, 2018,** the motion was granted, and current counsel was appointed. (Docs. ##35-36.)

On **October 8, 2018,** defense counsel moved to continue the trial for two cycles, which was granted. (Docs. ##38, 42.) The case is currently set for the January, 2019 trial term.

On **October 10, 2018,** defense counsel filed the current motion to dismiss. (Doc. #40.)

At the evidentiary hearing, defendant testified that in 2016 he was living at 3590 NW 32nd Court, Fort Lauderdale,[1] Florida with his biological mother, Ranessia McBride, with whom he had previously been estranged. He has been living there for about three years (the latter part of 2015). Defendant testified he had stopped living at the Miami Gardens address on his driver's license in early 2015. Defendant also testified that he was not aware that he had been indicted until his arrest, and that he had not been attempting to evade law enforcement officers. Defendant could not recall any publicly available document which reflected that his residence was the Lauderdale Lakes address, except perhaps contact information maintained by a school for one of his seven children.

_____

[1] Other evidence identified this address as being in Lauderdale Lakes, not Fort Lauderdale.

Defendant asserts that the delay between the filing of the Indictment on July 6, 2016 and his federal arrest on July 26, 2018 was a violation of his constitutional right to a speedy trial. (Doc. #40, p. 2.)  Defendant also asserts that the time spent on the pre-indictment investigation should be considered in the speedy trial calculus.  (Doc. #40, pp. 2-3.)

The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ."  U.S. Const. amend. VI.  The Supreme Court has described the speedy-trial right as "amorphous," "slippery," and "necessarily relative."  Vermont v. Brillon, 556 U.S. 81, 89 (2009) (quoting Barker v. Wingo, 407 U.S. 514, 522 (1972)). Instead of adopting an inflexible approach, the Supreme Court has "established a balancing test, in which the conduct of both the prosecution and the defendant are weighed."  Brillon, 556 U.S. at 90 (quoting Barker, 407 U.S. at 529, 530).  Doggett v. United States, 505 U.S. 647 (1992) is the leading case addressing delay in arrest after the return of an indictment, and analyzed such delay utilizing the four Barker factors: (1) the length of the delay before trial, (2) the reasons for the delay, (3) defendant's assertion of his speedy trial right, and (4) actual prejudice to defendant.  The Eleventh Circuit assesses this type of speedy trial claim by weighing these Barker factors.  See United States

v. Oliva, \_\_\_\_ F.3d \_\_\_\_, 2018 WL 6252997, at \*3 (11th Cir. Nov. 30, 2018); United States v. Machado, 886 F.3d 1070, 1077-82 (11th Cir. 2018); United States v. Villarreal, 613 F.3d 1344, 1350 (11th Cir. 2010).  The Court must not only weigh the factors, but must state how heavily each weighs against the party.  United States v. Ingram, 446 F.3d 1332, 1336 (11th Cir. 2006).

**A. Length of Delay**

The length of delay factor first serves a "triggering" function which must be satisfied before the court may analyze the Barker factors.  Oliva, \_\_\_\_ F.3d \_\_\_\_, 2018 WL 6252997, at \*3; Villarreal, 613 F.3d at 1350.  To determine the length of delay, the Court must determine both the beginning date and the ending date of the delay.

As to the beginning date, the Court rejects defendant's argument that the pre-indictment investigative time must be included in the calculation of the length of the delay in this case.

> Only pretrial delay following a person's arrest, charge, or indictment is relevant to whether the Speedy Trial Clause of the Sixth Amendment is triggered. See United States v. Lovasco, 431 U.S. 783, 788-89, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977) (holding pre-indictment delay is "wholly irrelevant" to whether the Sixth Amendment speedy trial analysis is engaged) (quoting United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971)).

Ingram, 446 F.3d at 1339. As the Eleventh Circuit recently stated:

> But the right to a speedy trial—and the accompanying four-factor analysis—applies only *after* an individual becomes an accused by arrest or indictment. See Marion, 404 U.S. at 321, 92 S.Ct. 455 ("[W]e decline to extend [the] reach of the [Sixth] amendment to the period prior to arrest."); see also Lovasco, 431 U.S. at 788, 97 S.Ct. 2044 ("[A]s far as the Speedy Trial Clause of the Sixth Amendment is concerned, such [pre-indictment] delay is wholly irrelevant.").

United States v. Barragan, No. 17-15770, 2018 WL 4929423, at *1 n. 1 (11th Cir. Oct. 11, 2018) (alterations and emphasis in original). Therefore, the beginning date is July 6, 2016, the date the Indictment was filed. Villarreal, 613 F.3d at 1350.[2]

A post-indictment delay exceeding one year is generally sufficient to trigger the Barker analysis. Doggett, 505 U.S. at

---

[2] The Eleventh Circuit does, however, consider "inordinate" pre-indictment delay in determining how heavily post-indictment delay weighs against the government. Ingram, 446 F.3d at 1339 ("But once the Sixth Amendment's speedy trial analysis is triggered, it is appropriate to consider inordinate pre-indictment delay in determining how heavily post-indictment delay weighs against the Government."); Oliva, ___ F.3d ___, 2018 WL 6252997, at *7-8 (same). Here, while the result of the investigation was a single count against defendant, the charge is not a simple offense but a fraud-based offense. The investigation involved multiple targets engaging in fraudulent activities in connection with the Seminole Indian casino. In separate Indictments, defendant and four other individuals were charged with similar fraud offenses. See *supra* p. 2. There has been no showing that the investigation was unduly prolonged or intentionally delayed. The Court finds that the pre-indictment delay of fifteen months (from the March 17, 2015 referral to FBI to the July 16, 2016 Indictment) in this case was not "inordinate," and therefore pre-indictment delay is not considered in the weighing process.

652 n.1; <u>Oliva</u>, ____ F.3d ____, 2018 WL 6252997, at *3. While defendant only complains about the delay until his federal arrest (July 26, 2018), case law instructs the court to utilize either the date the motion to dismiss is resolved, <u>Villarreal</u>, 613 F.3d at 1350, or the trial date, <u>United States v. Dunn</u>, 345 F.3d 1285, 1286 (11th Cir. 2003), as the ending date. In this case, defendant was indicted on July 6, 2016, federally arrested on July 26, 2018, is having his motion to dismiss resolved in December, 2018, and has a scheduled trial date in January, 2019. This delay of 30-31 months is sufficient to trigger the constitutional speedy trial inquiry.[3] <u>See</u> <u>Ingram</u>, 446 F.3d at 1336-37 (two year delay sufficient to trigger <u>Barker</u> test).

While the length of delay is sufficient to trigger the <u>Barker</u> analysis, this does not necessarily mean the length of delay weighs heavily against the government, since weight is a separate inquiry. <u>Doggett</u>, 505 U.S. at 651-52; <u>Oliva</u>, ____ F.3d ____, 2018 WL 6252997, at *3. While the first factor weighs against the government, for the reasons discussed in connection with the second factor, it does not weigh heavily against the government.

---

[3] The government agrees that the delay in this case is sufficient to trigger review of the <u>Barker</u> factors, although it calculates the relevant delay as being about twenty-four months. (Doc. #47, p. 8.)

**B. Reasons for Delay**

The next inquiry examines the reasons for the delay, and evaluates whether the government or the defendant is more to blame for the delay. Doggett, 505 U.S. at 652-53, Machado, 886 F.3d at 1079-80. The burden is on the prosecution to explain the cause of the pre-trial delay. Villarreal, 613 F.3d at 1351 (citation omitted); Ingram, 446 F.3d at 1337 (citation omitted). The Court allocates different weight to different reasons for delay, depending upon whether the reasons were intentional, more neutral, or constituted a valid reason:

> (1) "[a] deliberate attempt to delay the trial in order to hamper the defense [is] weighted heavily against the government"; (2) "[a] more neutral reason such as negligence or overcrowded courts [is] weighted less heavily [against the government] but nevertheless [is] considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant"; and (3) "a valid reason, such as a missing witness, . . . serve[s] to justify appropriate delay." A government's inability to arrest or try a defendant because of the defendant's own evasive tactics constitutes a valid reason for delay. But the government's failure to pursue a defendant diligently will weigh against it, more or less heavily depending on if the government acted in good or bad faith.

Villarreal, 613 F.3d at 1351 (alterations in original) (internal citations omitted). The longer the delay, however, the heavier any government negligence must be weighted. Doggett, 505 U.S. at 657 ("[T]he weight we assign to official negligence compounds over

time as the presumption of evidentiary prejudice grows."). See also Machado, 886 F.3d at 1080.

The government asserts that the delay in this case was for a valid reason because the FBI could not locate defendant despite diligent efforts. The government is not required to exhaust all conceivable avenues in finding a missing defendant, but is required to make a "diligent, good-faith effort" to find the defendant and bring him to trial. Machado, 886 F.3d at 1079-81. Defendant argues, however, that the efforts of the FBI did not amount to due diligence, and therefore this factor weighs heavily against the government. The Court finds that the evidence supports the government's position as to this factor.

The Court finds that the government did not act with a deliberate intent to delay the arrest of defendant or to hinder defendant's defense. The Court further finds no bad faith on the part of the government or its agents, and indeed finds that the government agents acted in good faith. These findings, however, do not resolve the matter because even negligent delay can result in a violation of defendant's constitutional speedy trial right.

Working backwards chronologically, the time between defendant's July 26, 2018 federal arrest and his anticipated January, 2019 trial is not challenged by defendant. The Court finds that these six months do not weigh against either party. Neither the government nor the defendant are culpable for the

delays after defendant appeared in Fort Myers, and the delays were proper and the time excludable under the Speedy Trial Act.

The disputed time period is between defendant's July 26, 2018 federal arrest and his July 6, 2016 Indictment. While this is a two year period, it does not weigh heavily against the government under the circumstances of this case.

Defendant testified that he did not know about the Indictment, and did not make efforts to avoid law enforcement because of the Indictment. Nothing in the record contradicts this testimony. Therefore, there is no willful conduct which may be attributed to defendant as a cause for the delay. Ingram, 446 F.3d at 1337-38.

The record establishes that the government diligently and in good faith made reasonable efforts to locate and arrest defendant on the Arrest Warrant. Defendant resided with his biological mother, with whom he had previously been estranged, at an address that had no formal connection to him. For approximately three years defendant used a Florida identification card which he knew contained the wrong address. The conduct of the FBI, summarized above, showed consistent and diligent efforts to locate defendant. While these efforts proved unsuccessful, it was not for a lack of diligent and reasonable efforts. This factor weighs against the

government because of the length of time, but does not weigh heavily against the government.[4]

## C. Defendant's Assertion of Speedy Trial

Defendant had his initial appearance before a magistrate judge in Fort Myers on August 9, 2018. (Doc. #14.) The Federal Public Defender's Office was appointed the same day (Doc. #16) and a detention hearing was scheduled. (Doc. #18.) On August 14, 2018, defendant orally moved to continue the detention hearing (Doc. #22), which was granted. (Doc. #23.) Defendant ultimately waived the detention hearing. (Docs. ##26-28.) Through counsel, defendant requested a continuance of the trial date at a September 10, 2018 status conference, which was granted. (Docs. ##31-33.) On September 11, 2018, the FPD moved to withdraw because it had previously represented defendant's aunt Ashley McBride, who had

---

[4] In his motion, defense counsel asserted that defendant's current address (3590 NW 32nd Ct, Lauderdale Lakes, Fl) was listed in the Broward County Clerk of Court records in connection with a May 2, 2015 state misdemeanor arrest in Case No. 15-6615MM 10A. (Doc. #40, p. 3.) No such evidence was presented at the evidentiary hearing. The Court, however, will take judicial notice of the Broward County Clerk of Courts docket sheets for that case (filed here as Court's Exhibit A). The state docket sheets do reflect the Lauderdale Lakes address at one location, but the Notice of Court Date was sent to the Miami Gardens address listed on defendant's Florida identification card. Additionally, the booking report for this arrest listed defendant's permanent address as the Miami Gardens address.

been indicted on a "strikingly similar" indictment. (Doc. #34.)
The motion was granted, and current counsel was appointed on
September 12, 2018. (Docs. ##35-36.)  On October 8, 2018, defense
counsel moved to continue the trial for two cycles, which was
granted. (Docs. ##38, 42.)  On October 10, 2018, defense counsel
filed the current motion to dismiss. (Doc. #40.)

Although defendant through counsel moved for three
continuances prior to filing his speedy trial motion, defendant
has asserted his speedy trial right at a reasonable point in the
proceedings.  This factor weighs against the government, but not
heavily.  Oliva, ___ F.3d ___, 2018 WL 6252997, at *6 n. 11.

### D. Prejudice as Result of Delay

The final factor is the extent to which the defendant suffered
actual prejudice from the delay.  In the Eleventh Circuit, if "the
first three factors do not weigh heavily against the government,
the defendant generally must demonstrate actual prejudice to
succeed on his speedy trial claim." Villarreal, 613 F.3d at 1355
(citation omitted); Dunn, 345 F.3d at 1296.  Here, as discussed
above, the first three factors do not weigh heavily against the
government.  Therefore, defendant must establish actual prejudice.

Defendant may demonstrate actual prejudice by showing "(1)
oppressive pretrial incarceration, (2) anxiety and concern of the
accused, and (3) possibility that the accused's defense will be
impaired." United States v. Clark, 83 F.3d 1350, 1354 (11th Cir.

1996).  See also Villarreal, 613 F.3d at 1355; Machado, 886 F.3d at 1081-82.  The "most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Villarreal, 613 F.3d at 1355 (quotation and citation omitted).

Here, defendant was not in federal custody until his July 26, 2018 federal arrest, and he initially waived a detention hearing. Defendant's more recent request for pretrial release was denied on October 29, 2018.  (Doc. #52.)   The Court finds there was no "oppressive pretrial incarceration" in this case.   Additionally, since there was no evidence defendant knew of the Indictment, there could be no resultant "anxiety and concern" about it.

The only remaining type of prejudice, and the most important, is an impaired defense.  Barker explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." 407 U.S. at 532. Doggett stated

> that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.  While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant facts, and its importance increases with the length of delay.

505 U.S. at 655-56 (internal citation omitted); <u>Villarreal</u>, 613 F.3d at 1355-56 (concluding no speedy-trial violation, although nearly 10-year delay from indictment to arrest).

The Motion to Dismiss asserted prejudice because defendant "is prejudiced in trying to recreate where he was during the time period of February 2015 for a possible alibi defense, as Mr. Kendrick appears in no videos of the discovery." (Doc. #40, p. 4.)[5]  Later, the Motion asserts prejudice because defendant would have obtained a bond if arrested earlier and he now "has to formulate his defense from jail, . . . does not have access to any information that may benefit his defense, . . . cannot recreate his steps because of the delay to assist the undersigned in developing defenses because of the age of the case." (Doc. #40, p. 7.)  The evidence at the evidentiary hearing did not support these allegations or establish any actual prejudice to defendant from the delay.  This factor therefore does not weigh against the government.

Accordingly, it is hereby

**ORDERED:**

Defendant's Motion to Dismiss the Indictment (Doc. #40) is **DENIED.**

---

[5] The government disputes that defendant is not on any of the videos.

**DONE and ORDERED** at Fort Myers, Florida, this __4th__ day of December, 2018.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record